IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **NICOLE SKIBICKI,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-17-1366 |
| **FAIRMONT PLAZA,** *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole Skibicki informed Defendant Fairmont Plaza ("Fairmont") that Douglas Skibicki, a relative of hers, fraudulently induced her to sign mortgage documents and a related sales contract making her a co-owner of 4801 Fairmont Plaza, Unit 705, Bethesda, Maryland (the "Property").[1] Am. Compl. ¶¶ 10, 14, 27–28, ECF No. 29.[2] Despite this knowledge, Fairmont, on its own and through its counsel, Defendant Ellen W. Throop, sent Ms. Skibicki two collection letters in mid-2013 for condominium fees and eventually successfully sued her in the District Court for Montgomery County to recover the unpaid fees. *Id.* ¶¶ 29–35.

On April 14, 2017, Ms. Skibicki filed a complaint in the Circuit Court for Montgomery County against Fairmont, Throop, and her firm, Elmore, Throop & Young P.C. *See* Not. of

---

[1] Douglas Skibicki was indicted for mail fraud in connection with his purchase of the Property. Superseding Indictment ¶¶ 73–78 in *United States v. Skibicki*, No. CCB-10-151 (D. Md. 2010).

[2] For purposes of considering Defendant's Motion, this Court accepts the facts that Plaintiff alleged in her Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). The Court also takes judicial notice of matters of public record. *See* Fed. R. Evid. 201; *Hasan v. Friedman & MacFadyen, P.A.,* No. DKC–11–3539, 2012 WL 3012000, at *1 & n.1 (D. Md. July 20, 2012); *Kalos v. Centennial Sur. Assocs.*, No. CCB–12–1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012).

Removal ¶ 1, ECF No. 1; Compl., ECF No. 2.  Defendants removed to this Court, Not. of Removal, and Ms. Skibicki amended her Complaint, Am. Compl., ECF No. 29.  In the Amended Complaint, Ms. Skibicki alleges that Defendants' attempts to collect condominium fees that she did not owe violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 – 204; and the Maryland Consumer Protection Act ("MCPA"), Com. Law §§ 13-101 – 13-501. Am. Compl. ¶¶ 92–110.  Ms. Skibicki also claims that she can recover under the theory of respondeat superior. *Id.* ¶¶ 111–15.

Defendants have moved to dismiss Ms. Skibicki's claims, ECF No. 37, and the motion has been fully briefed, ECF Nos. 37-1, 38, 40.  A hearing is not necessary.  *See* Loc. R. 105.6. Defendants argue, *inter alia*, that Ms. Skibicki's claims are barred by *res judicata* and were filed outside the statute of limitations.  *See* Defs.' Mem. 11–19.  Because I find that *res judicata* precludes her claims for alleged violations for the collection of pre-foreclosure fees and her post-foreclosure collection claims are time barred, I will grant Defendants' motion and dismiss this case without reaching Defendants' remaining grounds for dismissal.

**State Court Proceedings**

The Property was foreclosed on by Ocwen Loan Servicing, on May 22, 2013, and the foreclosure sale was ratified on July 19, 2013.  Am. Compl. ¶ 43; State Ct. Docket 374639V, Docket Entry 30, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis.  On August 23, 2013, Fairmont, through Throop, filed a complaint in the District Court of Maryland for Montgomery County, seeking to recover from Ms. Skibicki $15,420.90 in unpaid condominium and other fees for the Property.  *Am. Compl.* ¶¶ 57–59; *see also* State Ct. Docket 060200159742013.  Fairmont sought to collect fees owed on the Property both before and after

2

the foreclosure—specifically those that accrued from "April 2011 to the end of 2013." Am. Compl. ¶¶ 44, 57–59. The State District Court transferred the case to the Circuit Court for Montgomery County when Ms. Skibicki requested a jury trial; Defendants then reduced their demand below the State Circuit Court jurisdictional minimum and objected to the jury trial request, noting that "the foreclosure had been ratified" and arguing that, as a result, Ms. Skibicki's "debt to [Fairmont] had been reduced and no longer exceeded $15,000." Cir. Ct. Appeal Op. & Or. 1–2, 4, ECF No. 46-1. The State Circuit Court then remanded the case to the State District Court. Following a trial on May 17, 2017 in which the only issue was Ms. Skibicki's liability for unpaid condominium and other fees that were owed *before* the foreclosure, judgment was entered against Ms. Skibicki, and Fairmont was awarded $11,134.19 (inclusive of interest) and $2,718 in other costs and fees. *See id.* at 2; State Ct. Docket 060200159742013.

Ms. Skibicki filed an appeal with the Circuit Court for Montgomery County. State Ct. Dockets 060200159742013 & 9608D. On January 26, 2018, the State Circuit Court affirmed the State District Court's ruling and found in Fairmont's favor on all counts. Cir. Ct. Appeal Op. & Or. 4–5; State Ct. Docket 9608-D, Entry No. 13. Ms. Skibicki petitioned for a writ of certiorari to the Maryland Court of Appeals, ECF No. 47-1; however, her petition was denied on April 24, 2018. State Ct. Docket 9608-D, Entry No. 15; *see also* ECF No. 48-1.

## Standard of Review

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Under this Rule, Skibicki's Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a

3

plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). If an affirmative defense "clearly appears on the face of the complaint," however, the Court may rule on that defense when considering a motion to dismiss. *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000) (citation and quotation marks omitted)). Affirmative defenses include *res judicata* and statute of limitations. Fed. R. Civ. P. 8(c)(1).

Ms. Skibicki attached a Fee Statement and a Demand Notice to her Amended Complaint. ECF Nos. 29-6, 29-7. The Court "may consider the complaint itself and any documents that are attached to it." *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (citations and quotation marks omitted); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Where allegations in the Complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991).

**Discussion**

*Res Judicata*

*Res judicata* "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any

legal theory, cause of action, or defense which could have been asserted in that action." *Reid v. New Century Mortg. Corp.*, No. AW-12-2083, 2012 WL 6562887, at *3 (D. Md. Dec. 13, 2012) (quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009)) (citation and internal quotation marks omitted). When considering this defense, "a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Kalos*, 2012 WL 6210117, at *2 (quoting *Andrews*, 201 F.3d at 524 n.1). And, when a federal court litigant asserts *res judicata* based on a state court judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Under Maryland law, *res judicata*, or claim preclusion, provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel Cty. Bd. of Educ. v. Norville,* 887 A.2d 1029, 1037 (Md. 2005)). Defendants argue (and Plaintiff does not dispute) that they were the same parties in the underlying state court matter, No. 0602-0015974-2013, where Defendants sought to collect unpaid condominium fees from Ms. Skibicki. *See* Defs.' Mem. 12; Pl.'s Opp'n 10–12. Also, there is a final judgment on the merits, as Ms. Skibicki's petition for writ of certiorari was denied. *Hawkins v. Citicorp Credit Servs., Inc.*, 665 F. Supp. 2d 518, 524 (D. Md. 2009) (finding that, following judgment in creditor's favor, denial of a petition for writ of certiorari to the Maryland Court of Appeals constituted a final judgment).

This leaves only whether the claims are "identical." Under Maryland law, courts apply the transaction test to determine whether claims are identical. *See Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman,* 731 A.2d 916, 928 (Md. 1999)). Notably, *res judicata* bars not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Boyd*, 806 A.2d at 325 (citing *Gertz v. Anne Arundel Cnty.,* 661 A.2d 1157, 1161 (Md. 1995)). "[E]ven if a claim or defenses was not asserted in the first action, it may be precluded if it arose from the same series of transactions as the claim that was adjudicated." (citing *Long,* 957 A.2d at 187 n.16). With regard to counterclaims, this Court has held:

> [S]ince counterclaims are permissive rather than mandatory under Maryland law, where a defendant could have brought a counterclaim in the first action but failed to do so, he is not precluded from bringing that claim in a subsequent action unless "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Sheahy,* 284 F.Supp.2d at 282 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 22(2) (1982)); *accord Moore v. Nissan Motor Acceptance Corp.,*376 Md. 558, 831 A.2d 12, 16–17 (2003). The question is "whether the allegations in a new suit, 'if proven to be true, would negate, contradict, and in that sense nullify an essential foundation for the earlier ... judgment.'" *Sheahy,* 284 F.Supp.2d at 282–83 (quoting *Green,* 828 A.2d at 830). This test is narrower than the transaction test. *See Moore,* 831 A.2d at 16 (quoting RESTATEMENT § 22(2)(B) cmt. F).

*Hawkins*, 665 F. Supp. 2d at 524–25.

Defendants argue that Ms. Skibicki's claims relate to the unpaid condominium fees litigated in state court—specifically the legality of Defendants' attempts to collect them—and therefore, applying the transaction test, they are barred because she could have raised them in state court. Defs.' Mem. 13, 16–17. Ms. Skibicki argues that she was not required to raise her

claims because Maryland is a "permissive counterclaim state" and "[*r*]*es judicata* is not a legal doctrine to bar the assertion of counterclaims, but only to prevent a party from relitigating the same cause of action." Pl.'s Opp'n 11.

In *Hawkins*, as here, "the state adjudication concluded that [the plaintiff] owed a valid debt," whereas the plaintiff's claim in the subsequent action "is that the same debt was illegal." 665 F. Supp. 2d at 524. Further, when the claims in the subsequent action would have been counterclaims in the initial action, "the subsequent action [can] only be precluded if 'the prior action had eventuated in a judgment for plaintiff since only in such a case would there be the threat of nullification of the judgment or impairment of rights.'" *Id.* at 525 (quoting *Sheahy*, 284 F. Supp. 2d at 282). Here, judgment was entered in favor of Fairmont, the plaintiff in the prior action, thereby making nullification possible if Ms. Skibicki proceeds with her claims in this Court. With that in mind, Ms. Skibicki "cannot avoid *res judicata* simply by carefully drafting a complaint," as nullification may be explicit or implicit. *See id.* at 526.

In Ms. Skibicki's view, when Defendants "voluntarily lowered their damages sought in the state court proceeding," they were "exclud[ing] the postforeclosure amounts from the district court proceedings," and that exclusion is tantamount to an "admission against interest — Defendants have already admitted that Nicole Skibicki did not owe the sums alleged." Pl.'s Opp'n 12. As best as I can discern, Ms. Skibicki is arguing that, even if her claims in this litigation arise out of the same transaction or occurrence at issue in the state court litigation, they are not barred by *res judicata* because Defendants did not seek to recover post-foreclosure fees in state court, and therefore, a judgment in her favor in this Court would not nullify the state court judgment. Indeed, Defendants acknowledge that the judgment in the state court did not include post-foreclosure fees. Defs.' Reply 6. Nonetheless, Ms. Skibicki's allegations of

statutory violations are not limited to collection efforts after the foreclosure; she also takes issue with Defendants' attempts to collect fees owed before the foreclosure.

Ms. Skibicki could have brought her allegations regarding pre-foreclosure collections before the state court. And by claiming statutory violations that could bar or diminish part of Defendants' recovery of unpaid pre-foreclosure fees, Ms. Skibicki is bringing claims whereby her success in this Court would undermine the state court decision insofar as it ruled that Fairmont was permitted to collect all of the condominium fees it sought. Therefore, collection in this action would "negate, contradict, and nullify" the judgment of the state court. *See Hawkins*, 665 F. Supp. 2d at 525–26 ("A judgment in Hawkins' favor would *de facto* impair Citibank SD's rights under the state judgment by finding that Citibank SD was not legally entitled to interest above seven percent and requiring Citibank SD's corporate affiliate to compensate Hawkins for collecting it."); *Sheahy*, 284 F. Supp. 2d at 283. Because all elements of *res judicata* have been met regarding Ms. Skibicki's pre-foreclosure collection claims, those claims are precluded and must be dismissed.

Ms. Skibicki also could have brought her allegations regarding post-foreclosure collections as counterclaims before the state court; they arise from the same transaction or occurrence. However, as noted, Defendants did not seek, and therefore did not recover, *post-*foreclosure fees in state court. *See* Defs.' Reply 6. Therefore, that debt was not part of the state court judgment in Defendants' favor. Defendants' argument that the state court ruled on the entire "extent of Ms. Skibicki's obligations for condominiums assessments," Defs.' Reply 6, inaccurately expands the scope of the state court judgment. Consequently, a judgment in Skibicki's favor in this Court on the post-foreclosure fee collection efforts would not nullify the

state court judgment. Therefore, I do not find that her claims regarding post-foreclosure collection by Defendants to be barred by *res judicata*.

*Statute of Limitations*

An FDCPA claim "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "[T]he limitations period for FDCPA claims commences 'from the date of the first violation, and subsequent violations of the same type do not restart the limitations period.'" *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316 (D. Md. 2014) (quoting *McGhee v. JP Morgan Chase Bank, N.A.*, No. DKC-12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013) (quoting *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012))), *aff'd*, 584 Fed. App'x 135 (4th Cir. 2014). "Claims under the MCPA and MCDCA are subject to a three-year statute of limitations." *Ayres v. Ocwen Loan Servicing LLC*, 129 F. Supp. 3d 249, 272 (D. Md. 2015) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101). And claims under each statute accrue "when the claimant in fact knew or reasonably should have known of the wrong." *Id.* (quoting *Walton v. Wells Fargo Bank, N.A.*, No. AW-13-428, 2013 WL 3177888, at *6 (D. Md. June 21, 3013)).

Ms. Skibicki received notices from Defendants in June and July 2013 regarding outstanding condominium fee debts regarding the Property. *See* Fee Statement, ECF No. 29-6; Demand Notice 1–2, ECF No. 29-7. She argues that these notices were insufficient to place her on notice and that the filing of a complaint is a separate action that restarts the statute of limitations. Pl.'s Opp'n 5–7 (citing, *e.g.*, *Akalwadi v. Risk Mgmt. Atls., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004); *Boccone v. Am. Express Co.*, No. RDB-05-3436, 2007 WL 2914909, at *4 (D. Md. Oct. 4, 2007)).

In *Bey*, 997 F. Supp. 2d 310, the plaintiff made similar arguments—also citing *Akalwadi* and *Boccone*—that I found to lack merit, and ultimately, I found that that case was barred by the statute of limitations:

> [T]he alleged FDCPA violations occurred when [Defendants] "threaten[ed] to take any nonjudicial action to effect dispossession or disablement of property," 15 U.S.C. § 1692f(6), or "threat[ened] to take any action that cannot legally be taken," § 1692e(5). Accepting Plaintiff's facts as true, the initial alleged violation occurred when [Defendants] threatened to foreclose on Plaintiff's property prior to filing the foreclosure action on May 15, 2012, *see* Am. Compl. ¶¶ 13–14, even if Defendants continued to communicate with Plaintiff after May 30, 2012. What Plaintiff characterizes as subsequent violations are better viewed as communications regarding the first violation, not as discrete and separate violations. *See McGhee*, 2013 WL 4495797, at *7 n. 10. Because the alleged violation occurred the first time that Defendants threatened to collect the debt that Plaintiff believed they lacked the right to collect, the statute of limitations began to run at that time with regard to related communications. The logical result of Plaintiff's contentions to the contrary would disincentivize creditors from attempting to resolve debts extrajudicially because each notice attempt would restart the statute of limitations. Therefore, the FDCPA statute of limitations is not reset by each communication where (1) the subsequent communications are continued efforts to collect the same debt, *see id.,* and (2) the validity of the debt itself is not challenged, *see Reyes v. Wells Fargo Bank, N.A.*, No. 1:13–CV–547, 2013 WL 3874527, at *2 (E.D. Va. July 24, 2013)—especially when bad faith is not alleged.

*Id.* at 316–17.

Ms. Skibicki's allegations address a continuing violation like those of the plaintiff in *Bey*. *See id.* Ms. Skibicki first received a notice from Fairmont dated June 24, 2013 (after the foreclosure) stating that she owed "condo fee[s] in the amount of $429.00 for the month of July 2013. Fee Statement. Then on July 29, 2013—after the foreclosure sale was ratified—Ms. Skibicki received a demand from Defendants that informed her that she owed assessments from May 22, 2013 to July 31, 2013, that there would be "accelerated regular assessments through December 2013," and that a lien would be recorded if payments were not paid. Demand Notice 1–2. Ms. Skibicki attempts to argue that because Ocwen Loan Servicing is included on this

second notice (the Demand Notice), Ms. Skibicki was unaware she may be held liable. Pl.'s Opp'n 6. However, this argument is not persuasive. The second notice was directed to her as well as Douglas Skibicki and Ocwen Loan Servicing, LLC. Demand Notice 1. Indeed, all of the attempted violations alleged stem from the initial attempts on June 24, 2013 and July 29, 2013 to collect on the condominium fees after the foreclosure, which were directly addressed to her. *See* Fee Statement; Demand Notice. Ms. Skibicki herself attached these notices to her pleadings, which shows that she was aware of Defendants attempts to collect from her in June and July 2013. Moreover, none of the later collection efforts sought to collect debts beyond those identified in the June and July collection notices. To find that Defendants' action in state court would renew the statute of limitations "would disincentivize creditors from attempting to resolve debts extrajudicially because each notice attempt would restart the statute of limitations." *Bey*, 997 F. Supp. 2d at 316. As Defendants were always attempting to collect the same debt, Ms. Skibicki was on notice of Defendants' attempts well before she was served with the state complaint as another attempt to collect the same debt in 2016.

At the latest, Ms. Skibicki knew of Defendants' attempts to collect the post-foreclosure condominium fee debt on July 29, 2013. Therefore, the statute of limitations on her FDCPA claims ran on July 29, 2014, and the statute of limitations on her MCDCA and MCPA claims ran on July 29, 2016. Ms. Skibicki filed her complaint in state court on April 14, 2017. Therefore, Ms. Skibicki's claims alleging violations under the FCDPA, MCDCA, and MCPA are all time barred. *Bey*, 997 F. Supp 2d at 316–17; *Ayres*, 129 F. Supp. 3d at 272; *McGhee*, 2013 WL 4495797, at *7 n.10

# **ORDER**

Accordingly, it is this 14th day of August, 2018, hereby ORDERED that:

1. The Motions to Dismiss, ECF No. 37, IS GRANTED;

2. Plaintiff's Complaint IS DISMISSED; and

3. The Clerk is DIRECTED to CLOSE THE CASE.

/S/
Paul W. Grimm
United States District Judge

jml